Carol TSO, individually and as administratrix of the estate of Terry Tso, deceased, Ngan Tso, Andrew Tso, et al., Plaintiffs–Appellants,

v.

John A. DELANEY, Walworth County, Wisconsin, Benjamin J. Coopman, Jr., et al., Defendants–Appellees.

No. 91–2928.

United States Court of Appeals, Seventh Circuit.

Argued March 3, 1992.

Decided July 22, 1992.

Vicki L. Arrowood, Kasdorf, Lewis & Swietlik, Janice A. Rhodes (argued), Milwaukee, Wis., Mark V. Ferrante, Chicago, Ill., J. Ric Gass, Kravit, Gass & Weber, Milwaukee, Wis., for plaintiffs-appellants Carol Tso, Ngan Tso, Andrew Tso, Jamie Choi and Yuen L. Leung.

Mark A. Grady, Donald M. Lieb (argued), Otjen, Vanert, Stangle, Lieb & Weir, Milwaukee, Wis., for defendants-appellees John A. Delaney, Walworth County, Wis., Benjamin J. Coopman, Jr., William Wilson and James Johnson.

Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Terry Tso was killed when his car collided with a county truck engaged in repair operations on a public highway. Members of Tso's family sued Walworth County and four of its employees for negligence in the operation and supervision of the truck. The Tsos' lawyer failed, however, to make proper service of process on the defendants within the required time period. We must decide in this appeal whether good cause exists to excuse that failure. We are also called upon to interpret a provision of Wisconsin law that permits recovery for injuries caused by the negligent operation of a motor vehicle. We affirm in part and reverse in part.

I.

Terry Tso's accident occurred on December 20, 1988. His wife, children and other family members, all Illinois residents, commenced this action on November 13, 1989, approximately one month before the statute of limitations was to expire. *See* Wis. Stat. § 893.80(1)(b). Initially named as defendants were Walworth County, John Delaney (the operator of the Walworth County truck) and the State of Wisconsin.[1] Three days later, the Tsos' attorney, Mark V. Ferrante, attempted to effect service on Delaney and Walworth County by sending them copies of the summons and complaint by certified mail. Neither mailing included any copies of the acknowledgment form specified in Fed.R.Civ.P. 4(c)(2)(C)(ii) or a self-addressed, stamped envelope.

On November 29, 1989, the County defendants filed their answer, raising insufficiency of service of process as an affirmative defense. The grounds for their objection—that a county cannot be served by mail and that mail service must include acknowledgment forms and return envelopes—were provided to the plaintiffs' counsel in a telephone conversation with the defendants' counsel on December 5, 1989. Following the telephone call, the Tsos' attorney mailed acknowledgment forms to each of the County defendants and to their attorney, but did not send return envelopes. Neither Delaney nor Walworth County returned the form. On March 14, 1990, after the 120-day time limit for service had passed, Delaney and Walworth County moved to dismiss for insufficiency of service of process. The plaintiffs then sought an extension of time in which to effectuate service.

---

1. The claims against the State of Wisconsin and three of its employees who were later added as defendants, James Peterson, Edgar McCarthy and Ralph Beiermeister, are not at issue in this appeal. The State defendants did not challenge service below. Because the claims against the State defendants had not been disposed of when appeal was taken, the district court properly directed entry of judgment as to the County defendants pursuant to Fed.R.Civ.P. 54(b).

The district judge issued three relevant rulings. First, on April 24, 1990, he issued a brief order granting an extension of time in which to effect personal service and denying the County defendants' motion to dismiss as moot.[2] Second, approximately two months later, on June 29, 1990, he decided to "reconsider whether [he had] properly granted plaintiffs an extension of time in which to effectuate service," and reinstated the defendants' motion to dismiss.[3] Finally, approximately a year later, on June 7, 1991, he vacated his earlier order granting an extension of time and granted the County defendants' motion to dismiss for insufficient service, concluding that the plaintiffs had not demonstrated good cause for their failure to make proper service within the required time period.

Meanwhile, new claims and new parties had been added in amendments to the Tsos' complaint. In July 1990, the plaintiffs added allegations of willful and wanton actions on the part of Delaney and Walworth County. In August 1990, the plaintiffs added as defendants three Walworth County employees, Benjamin J. Coopman, William Wilson and James Johnson, alleging that these defendants had inadequately instructed and supervised Delaney on highway maintenance procedures. (We refer to the latter three defendants as the Supervisory defendants, and to Delaney and Walworth County as the County defendants.)

## II.

■ It is undisputed that service of process was not properly made on the County defendants within the initial 120-day period established by Federal Rule of Civil Procedure 4(j). Rule 4(j) requires dismissal in such a case unless the plaintiff can show "good cause" why service was not made within the 120-day period.[4] Service on the County defendants was inadequate because it did not comply with the requirements of Rule 4(c): the acknowledgment forms, which were eventually mailed to the defendants, were never returned (and, in addition, had not been accompanied by return envelopes in the first place).[5] Service by mail (which has been authorized only since 1983) is not complete unless the acknowledgment form is returned by the defendant. *Adatsi v. Mathur*, 934 F.2d 910, 911-12 (7th Cir.1991).[6]

We must decide whether the district court erred in finding that the plaintiffs failed to show "good cause" to excuse their failure to make timely service. Our review is quite limited: we will not overturn such a decision unless the district court abused its discretion. *Floyd v. United States*, 900 F.2d 1045, 1046 (7th Cir.1990); *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir.1988).

■ We cannot say that the district court abused its discretion. Rule 4(j) ensures some flexibility in a determination of good cause, and the range of factors that

2. Personal service was made on Delaney and Walworth County on May 2, 1990, after the district judge had granted the extension of time.

3. The district judge reconsidered his earlier decision after the defendants requested that he certify an appeal to this Court.

4. Fed.R.Civ.P. 4(j) provides in relevant part:
   If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

5. Fed.R.Civ.P. 4(c)(2)(C)(ii) authorizes service of process on individuals and domestic and foreign corporations

by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18-A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

6. The plaintiffs also concede that Walworth County is not an entity that could be served by mail under Rule 4, providing an additional reason that service was improper as to the County.

may be considered by the district judge is not rigidly cabined. One thing that is clear from the cases, however, is that simple attorney neglect, without more, cannot serve as the basis for a finding of good cause under Rule 4(j). *Floyd,* 900 F.2d at 1047; *Powell v. Starwalt,* 866 F.2d 964, 965 (7th Cir.1989); *Geiger,* 850 F.2d at 333. Here we have attorney neglect, accompanied by nothing on the order of the "substantial extenuating factors such as sudden illness or natural disaster" suggested in *Floyd,* 900 F.2d at 1047.

■ The Tsos argue that their attorney exercised diligence and had a reasonable belief that he had met the service requirements of Rule 4. The attorney was on notice by November 29, 1989, when the County defendants filed their answer, that sufficiency of process was at issue. Even after the December 5 telephone call, more than a month remained to correct the deficiency.[7] Yet the Tsos' attorney never received the acknowledgment forms from the defendants, never attempted personal service and thus failed to make proper service. The plain language of the mail service rule (Rule 4(c)(2)(C)(ii)) insists that the acknowledgment form be returned; indeed, it goes further, requiring that, if the form is not returned within 20 days, service "shall be made" by other means. The plaintiffs' strongest argument is that the courts have not been completely consistent in holding that service is incomplete until the acknowledgment form has been returned. They rely heavily on the Second Circuit's decision in *Morse v. Elmira Country Club,* 752 F.2d 35, 39–42 (2d Cir.1984), in which the court held that mail service can be valid when it is received, even though the defendant fails to return the acknowledgment form. Every other circuit to rule on the issue has rejected the *Morse* rule. *Media Duplication Services, Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1233–34 (1st

Cir.1991); *Green v. Humphrey Elevator & Truck Co.,* 816 F.2d 877, 879–80 (3d Cir. 1987); *Armco, Inc. v. Penrod–Stauffer Bldg. Systems, Inc.,* 733 F.2d 1087, 1089 (4th Cir.1984); *Norlock v. City of Garland,* 768 F.2d 654, 657 (5th Cir.1985); *Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir.1991); *Gulley v. Mayo Foundation,* 886 F.2d 161, 165 (8th Cir.1989); *Worrell v. B.F. Goodrich Co.,* 845 F.2d 840, 841–42 (9th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989); *Schnabel v. Wells,* 922 F.2d 726, 728 (11th Cir.1991); *Combs v. Nick Garin Trucking,* 825 F.2d 437, 447–48 (D.C.Cir.1987). This Court explicitly rejected *Morse* last year, characterizing it as an "outlier." *Adatsi,* 934 F.2d at 911. The Tsos argue, however, that since *Adatsi* was not decided until after they attempted service, the issue was open in this circuit. But there is no indication that the plaintiff's attorney had read *Morse,* or indeed had done any but the most minimal research into Rule 4's requirements. We think that, *Morse* notwithstanding, the language of Rule 4(c)(2)(C)(ii) itself would have led a reasonably diligent attorney to effectuate service by some other means after no acknowledgment had been returned by the defendant. Moreover, if the plaintiffs' attorney had merely consulted the Practice Commentary in the United States Code Annotated, he would have discovered that this circuit actually addressed the issue in 1987, when we decided *Del Raine v. Carlson,* 826 F.2d 698, 705 (7th Cir.1987) ("as [plaintiff's] counsel should have known service by mail is not complete until acknowledged"), and again in 1988, when we decided *Geiger,* 850 F.2d at 332 n. 3 ("The rule in this and other circuits is that service by mail is not complete until an acknowledgment is filed with the court.").

■ The Tsos also point to a number of other factors as establishing good cause,

---

7. While the 120–day requirement of Rule 4(j) gave the plaintiffs until March 13, 1990 to serve the defendants, Wisconsin law gave them only 60 days after filing the complaint to effectuate service. *See* Wis.Stat. § 893.02. In a diversity action, the issue of when an action is "commenced" is governed by state law. *Walker v.*

*Armco Steel Corp.,* 446 U.S. 740, 752–53, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). In order to survive the statute of limitations, therefore, the plaintiffs were actually required to make proper service on or before January 12, 1990.

including the fact that dismissal is fatal to the action because the statute of limitations has run; that the defendants have suffered no prejudice; and that the plaintiffs have pursued the litigation for a year in reliance on the judge's initial extension of time for service. As for the first two factors—prejudice to the plaintiffs and lack of prejudice to the defendants—while we cannot say that such considerations are irrelevant to a good cause determination, they cannot by themselves provide good cause for the failure to make service within the 120-day period. *See Floyd*, 900 F.2d at 1048; *Powell*, 866 F.2d at 965–66. These considerations have to do with the gravity and equity of a dismissal for improper service, but they do not go toward an explanation for the failure—within the 120-day period—to achieve proper service. At the very least they would have to be accompanied by some showing of reasonable diligence in attempting to comply with the rules.

Finally, the Tsos argue that developments in the litigation during the year leading up to the district court's dismissal should play a role in the good cause determination. After the district court extended the time for service in April 1990, the plaintiffs added new claims and new parties in reliance on the court's extension. In particular, the Tsos added claims for wanton and willful conduct against the County defendants in July 1990. But since the district judge essentially changed his mind in June 1991, more than a year after he had granted the extension of time, the plaintiffs lost the opportunity to file those additional claims as a separate suit; by the time the judge had vacated his earlier extension of time for service, the statute of limitations

had run on the new claims.[8] This argument has a certain appeal, but it conveniently leaves out an important point. The period during which the plaintiffs reasonably relied on the district court's extension of time could not have been an entire year, but only two months, because the court in June 1990 ruled that it was going to reconsider the extension and reinstated the defendants' motion to dismiss. Therefore, while the court did not actually rule until a year later, the plaintiffs were put on notice that the service issue was up in the air in June 1990, which was before the running of the Tsos' asserted limitations period on the new claims. In any event, these subsequent events in the litigation do not reveal any event during the 120-day period that could be said to excuse the failure to effectuate proper service, and some such showing is generally required under Rule 4(j). *See Geiger*, 850 F.2d at 334.

The district judge acted within his discretion in finding that the plaintiffs did not show good cause for their failure to make proper service.

### III. ·

■ The district court granted the Supervisory defendants' motion to dismiss for lack of subject matter jurisdiction.[9] In a diversity action, the amount in controversy must exceed $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Under Wisconsin law, however, the maximum amount generally recoverable in a tort action against a municipality or its employees is $50,000.[10] An exception provides a greater limit—$250,000—for "damage proximately resulting from the negligent operation of a motor vehicle owned and

---

**8.** The Tsos assert that a two-year statute of limitations is applicable to the "wanton and willful" claims under Wis.Stat. § 893.57, so that the limitations period would have run in December 1990.

**9.** The Supervisory defendants, Coopman, Wilson and Johnson, had been added in the second amendment to the complaint and were properly served.

**10.** Wis.Stat. § 893.80(3) provides in relevant part:

The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any ... political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000.... No punitive damages may be allowed or recoverable in any such action under this subsection.

operated by a municipality...."[11] The district court held that the exception did not apply and that Wisconsin's $50,000 limit therefore precluded subject matter jurisdiction.

The district court relied on *Hamed v. County of Milwaukee*, 108 Wis.2d 257, 321 N.W.2d 199 (1982), which involved a pedestrian who was injured when hit by a jelly bean that had been fired from a school bus window by a 13–year–old passenger. A jury found the county negligent in supervising the passengers on the bus. The Wisconsin Supreme Court considered § 345.05 (which at the time did not limit damages) and concluded that the phrase "operation of a motor vehicle" is limited to "activities which involve the mechanical functioning of a motor vehicle" and not the "collateral use" of a vehicle. *Id.* at 277, 321 N.W.2d at 210. The court declined to apply § 345.05 because "the negligent supervision of passengers on a bus is not an activity which involves the mechanical functioning of a motor vehicle." *Id.* at 277–78, 321 N.W.2d at 210.

We disagree with the district judge's conclusion that *Hamed* controls the present action. There is a superficial similarity to *Hamed* since both cases involve claims for inadequate supervision. But § 345.05 says only that the *injury* (i.e., "damage") must result from the negligent operation of a motor vehicle, not that the particular breach of duty sued upon must itself *be* negligent operation of a motor vehicle. Thus, the Wisconsin Supreme Court has explained that § 345.05 "is applicable when the injury can be traced to incidents of vehicle operation on the highway rather than any collateral use such as loading." *Rabe v. Outagamie County*, 72 Wis.2d

492, 497, 241 N.W.2d 428, 431 (1976); *accord Hamed*, 108 Wis.2d at 277–78, 321 N.W.2d at 210. In *Hamed* and *Rabe*, § 345.05 did not apply because the injuries did not stem from the operation of motor vehicles at all, but from other sorts of negligent acts that happened to involve motor vehicles in some "collateral use." In the instant case, there is no question that the *injury*, as alleged, stems from the negligent operation of a motor vehicle. The Tsos' claims involve precisely the manner of operation and the location of the County truck with which Terry Tso's car collided; the fact that the Supervisory defendants themselves were not operating the motor vehicle does not change the fact that the plaintiffs' injury proximately resulted from the negligent operation of a motor vehicle. The more directly applicable authority appears to be *Schroeder v. Chapman*, 4 Wis.2d 285, 90 N.W.2d 579 (1958), in which the court held that the failure to warn and the blocking of a highway with a county vehicle came within the identical "operation of a motor vehicle" provision that preceded § 345.05. The court found that the county had violated that provision because of its inadequate warning on the highway, even though the act of warning itself would not literally have involved the mechanical operation of a motor vehicle. *Id.* at 293–94, 90 N.W.2d at 584–85.

We think that the $250,000 ceiling of Wis.Stat. § 345.05 applies to the claims against the Supervisory defendants. Those claims therefore should not have been dismissed for lack of subject matter jurisdiction.[12]

## IV.

The district court's dismissal of the action as to defendants Delaney and Wal-

---

**11.** Wis.Stat. § 345.05 provides in part:

(2) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by a municipality, which damage was occasioned by the operation of the motor vehicle in the course of its business, may file a claim for damages against the municipality concerned and the governing body thereof may allow, compromise, settle and pay the claim....

(3) A claim under this section shall be filed in the manner, form and place specified in

§ 893.80. The limitations under § 893.80(3) are applicable to a claim under this section, except that the amount recoverable by any person for any damages, injuries or death in any action shall not exceed $250,000.

**12.** The defendants offer additional grounds for affirming the district court's dismissal of the claims against the Supervisory defendants. These other issues are best resolved after full presentation in and consideration by the district court.

worth County for insufficiency of service of process is AFFIRMED. The district court's dismissal of the action as to defendants Coopman, Wilson and Johnson for lack of subject matter jurisdiction is REVERSED and the cause is REMANDED for further proceedings consistent with this opinion.